IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00208-MSK-CBS

CONSUMER CRUSADE, INC., a Colorado corporation,
Plaintiff,
v.

PUBLIC TELEPHONE CORPORATION OF AMERICA, a Florida corporation, and MUSA ESINLI; its Officer and Director,
Defendants.

---

ORDER

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendant Esinli's “Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 11" against Plaintiff (“Consumer Crusade”) and Consumer Crusades’ counsel (“Demirali law firm”). (filed June 2, 2005) (doc. # 15). Consumer Crusade’s Response to Defendants’ Motion for Sanctions under Rule 11 was filed on June 20, 2005. On June 03, 2005, a Memorandum referred the Motion for Sanctions to the Magistrate Judge.

After considering the evidence and arguments presented by counsel at a hearing on September 7, 2005, the court is fully advised in the premises. For the reasons discussed below, it is recommended that Esinli's Motion for Sanctions be GRANTED.

I. Statement of the Case

Consumer Crusade, filed a Complaint on February 3, 2005, alleging Esinli was sending unsolicited facsimiles ("junk faxes") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (Complaint, p. 1 at ¶ 1; p. 4 at ¶ 13) (doc. # 1). The TCPA creates a private right of action against individuals and corporations who send junk faxes. 47 U.S.C. § 227. The TCPA has been codified in the Colorado Consumer Protection Act. COLO. REV. STAT. § 6-1-702. Consumer Crusade acquired the junk fax claims asserted in this case through assignment from Colorado residents and businesses. (Complaint, p. 1 at ¶ 1).

After Consumer Crusade acquired the claims by assignment, its counsel, the Demirali law firm, directed one of the law firm's employees to conduct in-house research. (Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005). According to testimony offered by Demirali law firm employees, typical in-house research included calling telephone numbers listed on the faxes to ascertain the source of the faxes, going to any websites listed on the faxes, using public agency databases to verify the owner of any toll free telephone numbers listed on the faxes, and using private databases to verify the owner of any toll free telephone numbers listed on the faxes. (Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005). The Demirali law firm frequently uses a private individual's website ("DopplerFx") to verify toll free numbers listed on faxes. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). Demirali law firm employees testified that in-house research was a new practice they began in October 2004. (Motion Hearing, Witness Statements, Susan Beck and Richard Carlson,

September 7, 2005).

Prior to filing the original Complaint on behalf of Consumer Crusade, the Demirali law firm conducted only two hours of initial pre-filing research regarding the TCPA violations alleged in this case. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). The initial research took place in October 2004 and consisted of internet searches on DopplerFX and the Florida Department of State website. (Plaintiff Evidentiary Hearing Exhibit; *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). The DopplerFX search engine produced two listings or "hits" when the toll free number was searched. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). These hits listed four toll free numbers. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). Two of the toll free numbers were removal numbers, which are telephone numbers the fax recipient is supposed to call to be removed from the fax sender's contact list. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). The second set of toll free numbers were contact numbers, which are telephone numbers the fax recipient is supposed to call to get more information regarding the goods the fax is offering. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005).

DopplerFX provided the Demirali law firm with Esinli's name and address. (Plaintiff Evidentiary Hearing Exhibit). DopplerFX also listed Public Telephone

Corporation of America as an inactive entity per the Florida Department of State. (Plaintiff Evidentiary Hearing Exhibit). A Demirali law firm employee checked this information by entering Public Telephone Corporation of America in the Florida Department of State, Divisions of Corporations website. (Plaintiff Evidentiary Hearing Exhibit). The Florida Department of State website listed the Public Telephone Corporation of America as inactive, involuntarily dissolved in 1986, and provided Esinli's name as the registered agent. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005).

In January 2005, a Demirali law firm employee used Accurint, a Lexis-Nexis information service, to verify Esinli's address and telephone number. (Plaintiff Evidentiary Hearing Exhibit; *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). Between January 2005 and February 03, 2005, Consumer Crusade sent Esinli a demand letter alleging 422 TCPA violations. (Complaint, p. 4 at ¶ 13; *see also*, Motion Hearing, Witness Statement, Susan Beck, September 7, 2005).

On March 3, 2005, Esinli, through his counsel, informed Consumer Crusade that Esinli's corporation had been administratively dissolved on November 11, 1986, the corporation had not conducted any business since 1986, and Esinli was not responsible for the faxes. (Motion for Sanctions, Letter from Joseph I. Lipsky, March 3, 2005, at ¶¶ 3,4). In this same letter, Esinli informed Consumer Crusade that Rule 11 sanctions would be sought if the original Complaint was not withdrawn. (Motion for Sanctions, Letter from Joseph I. Lipsky, March 3, 2005, at ¶ ¶ 3,4). Consumer Crusade

did not withdraw the original Complaint. Instead, Consumer Crusade continued its pursuit of the litigation because "everyone denies it." (Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005; *see also*, Letter from Demirali Law Firm, March 21, 2005 at ¶ 3).

On March 17, 2005, after receiving Esinli's March 3, 2005 letter denying responsibility for the faxes, the Demirali law firm followed its standard procedure when it receives a communication denying the allegations it has asserted and conducted additional research. (Plaintiff Evidentiary Hearing Exhibit; *see also*, Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005). The Demirali law firm in-house researcher conducted an additional two hours of research. (Plaintiff Evidentiary Hearing Exhibit; *see also*, Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005). This additional research included calling the toll free numbers listed on the fax the Demirali law firm had in the Esinli case file. (Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005). In fact, according to witness testimony, March 17, 2005 was the first time the Demirali law firm's in-house researcher telephoned the toll free numbers on the fax. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005).

When the Demirali law firm in-house researcher called the toll free numbers on March 17, 2005, the in-house researcher received credible information that pointed to a corporation named Public Telephone Corporation and its president, Lenora Kaus. (Plaintiff Evidentiary Hearing Exhibit, *see also*, Motion Hearing, Witness Statement,

Richard Carlson, September 7, 2005, *see also*, Motion to Dismiss Parties, May 18, 2005). The additional post-filing research, which established Esinli was not responsible for the faxes, took approximately two hours, bringing the total research time to four hours. (Plaintiff Evidentiary Hearing Exhibit; *see also*, Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005, Motion to Dismiss Parties, May 18, 2005).

On March 21, 2005, four days after the Demirali law firm in-house researcher had determined Esinli had not sent the junk faxes, the Demirali law firm sent a reply to Esinli's counsel's letter of March 3, 2005 but did not withdraw the Complaint. (Motion for Sanctions, Letter from Jim Demirali dated March 21, 2005). The Demirali law firm informed Esinli that his protestations were inconsequential because "everyone denies it" and stated that the fact that the Florida Secretary of State had administratively dissolved the corporation was "irrelevant to the issue." (Letter from Demirali Law Firm, March 21, 2005 at ¶ 3, *see also*, Motion Hearing, Witness Statements, Susan Beck and Richard Carlson, September 7, 2005).

On March 23, 2005, another letter was sent by Esinli to Consumer Crusade reiterating that Esinli's corporation was dissolved in 1986 and was not responsible for the faxes. (Motion for Sanctions, Letter from Norman Malinski dated March 23, 2005). On March 29, 2005, Esinli filed a Motion for Extension of Time to file an Answer, which was granted on April 5, 2005.

On April 5, 2005, twenty days after the Demirali law firm did its additional research and determined Esinli was not the source of the junk faxes, Esinli served

Consumer Crusade and the Demirali law firm with a Motion for Sanctions, without filing it with the court, pursuant to Rule 11's safe harbor requirement. (Motion for Sanctions, June 2, 2005). On April 18, 2005, Esinli filed an Answer to Plaintiff's Complaint.

On April 25, 2005, the last day of the twenty-one day safe harbor period and forty days after the Demirali law firm determined Esinli was not the source of the junk faxes, the Demirali law firm drafted on behalf of Consumer Crusade, *but did not file*, a Motion to Amend the Complaint. (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005). The purpose of the Motion to Amend the Complaint was to change the named Defendants. (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005).

On May 18, 2005, *sixty-three* days after the Demirali law firm had done its additional research and discovered Esinli's corporation was not connected to the toll free numbers listed on the junk faxes, the Demirali law firm filed, on behalf of Consumer Crusade, a Motion to Dismiss Parties. (Motion to Dismiss Parties, May 18, 2005). On June 1, 2005 Esinli served and filed the pending Motion for Sanctions. (Motion for Sanctions, June 2, 2005).

## II. Analysis

### A. Federal Rule of Civil Procedure, Rule 11, Legal Standard and Safe Harbor

Federal Rule of Civil Procedure 11 was originally enacted in 1938 and revised in 1983. Charles Yablon, Hindsight, Regret, and Safe Harbors in Rule 11 Litigation, 37

LOY. L. A. L. REV. 599, 609 (2004). After the 1983 revision, the legal standard became objective reasonableness. *See Burkhart v. Kinsley Bank,* 804 F.2d 588, 589-90 & n. 3 (10th Cir. 1986) ("... whether a reasonable attorney admitted to practice before the district court would file such a document"); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829 (9th Cir. 1986) (a finding of subjective bad faith by the attorney signing pleading is not necessary under Rule 11).

Rule 11 provides that by signing, filing, submitting, or later advocating a pleading, written motion, and other paper, counsel is certifying that to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief. Fed.R.Civ.P.11(b).

Rule 11 also has a safe harbor provision:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule

> 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
>
> Fed.R.Civ.P.11(c)(1)(A).

Here, Esinli served Consumer Crusade and the Demirali law firm with the Motion for Sanctions, in which Esinli described the conduct that allegedly violated subdivision (b) of Rule 11. (Motion for Sanctions, June 2, 2005, served without filing on April 5, 2005, served with filing June 2, 2005). Consumer Crusade and the Demirali law firm did not take action, either by withdrawing the Complaint or correcting the Complaint, before the expiration of the 21 days provided by Rule 11(c)(1)(A). (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005) (amended complaint drafted but never filed). Thereafter, Esinli filed the pending Motion for Sanctions with this Court. Esinli has properly complied with Rule 11's safe harbor provisions.

B. Reasonable Inquiry

The purpose of Rule 11 is to "promote honesty in pleading." Charles Yablon, Hindsight, Regret, and Safe Harbors in Rule 11 Litigation, 37 LOY. L. A. L. REV. 599, 609 (2004). To avoid sanctions under Rule 11 an attorney must make a reasonable inquiry under the circumstances into the facts of the claim. *See Coffey v. Healthtrust, Inc.*, 1

F.3d 1101 (10th Cir. 1993). The legal standard applied to the inquiry is one of objective reasonableness. Charles Yablon, Hindsight, Regret, and Safe Harbors in Rule 11 Litigation, 37 LOY. L. A. L. REV. 599, 609 (2004); *see also*, *Burkhart v. Kinsley Bank,* 804 F.2d 588, 589-90 & n. 3 (10th Cir. 1986). The adequacy of the attorney's factual investigation is measured at the time of filing. *See* Fed.R.Civ.P. 11, Advisory Committee Note ("court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was submitted"). Every attorney has an affirmative duty to inquire into the facts before filing a pleading, and this inquiry must be reasonable under the circumstances. *Coffey v. Healthtrust, Inc*., 1 F.3d 1101, 1104 (10th Cir. 1993) (citing *Business Guides, Inc. v. Chromatic Comm. Enterprises, Inc.*, 498 U.S. 533 (1991)).

In response to Esinli's Motion for Sanction, the Demirali law firm argues that it conducted a reasonable inquiry prior to filing the Complaint against Esinli. (Motion Hearing, Opening Statements by A. M. Demirali, September 7, 2005). In assessing the reasonableness of the attorney's inquiry, the court should examine (1) how much time the attorney had for investigation, (2) whether the defendant permitted the plaintiff access to material information, and (3) the complexity of the factual issues. *Cook v. Rockwell Intern. Corp*., 147 F.R.D. 237, 246 (D. Colo. 1993).

1. Time available for factual inquires

Here, the Demirali law firm had adequate time to conduct a reasonable factual inquiry because it was not facing expiration of the statute of limitations. The TCPA

creates a private right of action, which has been codified in the Colorado Consumer Protection Act. COLO. REV. STAT. § 6-1-702. Under the Colorado Consumer Protection Act, legal action must be initiated within three years after the date on which the false, misleading, or deceptive actions occurred or the date on which the last in a series of such acts occurred or within three years after the consumer discovered the act. Id. The junk fax claims in this case, that Consumer Crusade acquired by assignment, arose in 2003. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). Accordingly, under the Colorado Consumer Protection Act, because the junk faxes were sent in 2003, Consumer Crusade had three years to commence an action against the party responsible for the junk faxes. COLO. REV. STAT. § 6-1-702; *see also*, (Plaintiff Evidentiary Hearing Exhibit; Motion Hearing, Witness Statements, Richard Carlson, September 7, 2005).

The Demirali law firm began its in-house research into the origin of the faxes in October of 2004, and filed the original Complaint, on behalf of Consumer Crusade, in February of 2005. Prior to October 2004, Consumer Crusade had used external research firms. (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005). The Demirali law firm's in-house researcher searched a website titled DopplerFX. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). DopplerFX had provided inaccurate information in the past and the Demirali law firm in-house researcher did not know what, if any, steps DopplerFX took to verify the information on its website. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). Although the Demirali law firm in-house researcher knew

DopplerFX had been inaccurate in the past, he did not take the routine research step of calling the toll free numbers on the fax in the case file to verify the DopplerFX information until March 17, 2005. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005) ("[R]emoval numbers will identify the company who sent the fax or the fax blaster.") Additional research conducted on March 17, 2005, by the Demirali in-house researcher, established Esinli was not the source of the faxes. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005). The March 17, 2005 research took no more than two hours. (Motion Hearing, Witness Statement, Richard Carlson, September 7, 2005).

Rule 11 sanctions are merited where, after factors such as the amount of time available to investigate are considered, it is apparent the attorney failed to make even minimal investigation of facts underlying a client's claim. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (attorney was not time pressured, yet failed to make a single telephone call to confirm facts before filing complaint the attorney's conduct was sanctionable). An attorney with a significant amount of time available before the expiration of the statute of limitations is expected to make a more comprehensive inquiry than an attorney working under severe time constraints. *Garr v. U.S. Healthcare*, Inc. 22 F.3d 1274, 1279 (3rd Cir. 1994).[1]

Neither Consumer Crusade nor the Demirali law firm has argued that it lacked

---

[1]The Court suggests in the context of this case's circumstances, it is not unreasonable for counsel to err on the side of caution and conduct his research with a greater degree of thoroughness when he intends to file against an out-of-state party in federal court due to the cost involved for the out of state party to defend in a foreign jurisdiction.

the time to investigate the facts. Nor has Consumer Crusade or the Demirali law firm argued the statute of limitations was about to expire and therefore there was inadequate time to investigate the facts of the original Complaint. Because Consumer Crusade and the Demirali law firm were not facing the expiration of the statute of limitations, had adequate time to conduct the four hours of research necessary to establish the factual basis for the original Complaint, and failed to follow their own research parameters, as testified to by two of the Demirali law firm employees, the court finds Consumer Crusade and the Demirali law firm failed to perform a reasonable inquiry under the circumstances.

2. Access to material information

Nor has Consumer Crusade or the Demirali law firm argued that access to material information was denied by Esinli. In fact, the Demirali law firm acknowledged that Esinli provided material information in his correspondence regarding the dissolution of Public Telephone Company of America, including the date the company was dissolved and the source of the information. (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005). Consumer Crusade and the Demirali law firm just did not believe Esinli "because everyone says it's not them." (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005). The court finds Consumer Crusade and the Demirali law firm had adequate access to Esinli's material information.

3. Complexity of factual issues

Consumer Crusade and the Demirali law firm argued that it can be difficult to determine the originator of the faxes and the fax broadcaster. (Motion Hearing, Opening Statements by A. M. Demirali, September 7, 2005). However, the factual issue in question, i.e., "who sent the faxes," is not so complex as to have confounded Consumer Crusade or the Demirali law firm if by their own admission, the total time needed to research and resolve who sent the faxes took approximately four hours and was conducted online and via telephone.

Even if Consumer Crusade, or the Demirali law firm, were to pursue this avenue of argument as an excuse for the original filing of the Complaint, it remains that any mistaken information in court documents, once discovered, must be promptly corrected. *U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore,* 406 F.3d 465, 470 (7th Cir. 2005) (discovery of mistake should have prompted "a reasonably competent second year law student . . . to vacate . . . and start over. . ."). Continued pursuit of litigation, despite knowledge of defects in the complaint, warrants sanctions. *Jones v. Int'l Riding Helmets, Ltd.*, 145 F.R.D. 120, 122 (N.D. Ga.1992) (complaint filed against a company that was not in business at time of accident); *see also, Woodfork By and Through Houston v. Gavin* 105 F.R.D. 100, 104-05 (N.D. Miss. 1985) (filing action without adequate investigation and pursuing the litigation after discovering error violated the letter and the spirit of Rule 11).

The evidence presented by Consumer Crusade and the Demirali law firm clearly indicates the Demirali law firm had identified a different party as the source of the faxes

as early as March 17, 2005. A Demirali law firm witness, Susan Beck, testified that a motion to amend the original Complaint had been drafted for the express purpose of changing the named defendants in the action but was *never filed* with the court. (Motion Hearing, Witness Statement, Susan Beck, September 7, 2005). The record shows that the Demirali law firm recognized its error in naming Esinli but instead of dismissing the complaint, the Demirali law firm and Consumer Crusade continued to pursue the litigation against Esinli, as is demonstrated by the March 23, 2005 letter from the Demirali law firm to Esinli.

Errors left uncorrected in court documents, inadequate research under the circumstances, and the continued pursuit of litigation of a claim by the Demirali law firm after discovering Esinli was not responsible for the junk faxes, are contrary to an attorney's role as an advocate to his or her client and an officer of the court. *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir 1993). Therefore, Rule 11 sanctions are warranted.

III. Conclusion

After assessing the factors that determine the reasonableness of the inquiry and finding that Consumer Crusade's inquiry was not hampered by time, absence of material information, or complexity of the factual issues, it is the court's determination that Consumer Crusade did not conduct a reasonable inquiry before filing the original Complaint.

Sanctions under Rule 11 are meant to cure the harm resulting from frivolous

pleadings and filings and to deter similar conduct in the future. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990). In order to deter filings conducted without reasonable inquiry, cure the monetary harm Esinli suffered, and ensure in the future that when mistaken information in court documents is discovered prompt action is taken to correct the documents, this court awards sanctions of reasonable attorney's fees accumulated after March 17, 2005 to Esinli. Accordingly,

IT IS ORDERED that:

1. Defendant Esinli's "Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 11" (filed June 2, 2005) (doc. # 15) is GRANTED. Consumer Crusade and the Demirali Law Firm shall be held jointly and severally liable for the sanctions.

2. On or before December 1, 2005, Esinli shall provide the court an itemized accounting of his attorney fees for work completed after March 17, 2005 regarding the original Complaint (doc. # 1 ) and Motion for Sanctions (doc. # 15).

**Advisement to the Parties**

Within ten days after service of a copy of a Magistrate Judge's order, any party may serve and file written objections to the order. Fed. R. Civ. P. 72(a). "A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). *See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.").

Failure to make timely objections to the Magistrate Judge's order(s) may bar

review by the District Judge and will result in a waiver of the right to appeal. *See Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)"); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991) (holding failure to timely object to a magistrate's findings waives appellate review of factual and legal questions).

Dated at Denver, Colorado, this 4th day of November, 2005.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge